Let's wait just a minute. Let everyone get settled. Okay? Okay, Mr. Rivera. May it please the court, Javier Rivera on behalf of the appellants. The question before the court today is regarding jurisdiction. Jurisdiction in this case is a two part question. First, whether this court has jurisdiction to entertain this suit following the Supreme Court's recent decision in Patel v. Garland. If the answer to the question is yes, then question two. Substantively, what agency or department within the government has a jurisdiction to review the appellant's applications for adjustment status? So, it's a question of which prevails, whether it's Patel or our opinion Duarte? I don't think it's necessarily a Patel v. Duarte. I think the initial question is, can you review? The second question is substantively, which agency or department has jurisdiction to review the application? So, it's a two part jurisdictional question. Well, are you suggesting that Duarte doesn't matter at this point? I don't think that Duarte doesn't matter. I think it matters in part because in the court in Duarte, they assume jurisdiction over a similar lawsuit. But things have happened subsequent to Duarte that ask us to revisit some of the holdings. The plaintiffs, the appellants, are all non-citizen temporary protected status holders who, pursuant to their advance parole, departed the United States and re-entered the U.S. At the time, they were paroled into the United States. They filed their applications for adjustment status with the defendants and all of the applications were refused, stating they had lacked jurisdiction. Now, the plaintiffs and appellants began this litigation in August of 2021 and much has transpired since the initiation of this litigation. On March 3rd, as you mentioned, 2022, this court made a ruling in Duarte v. Mayorkas in a group of similarly situated plaintiffs for the defendants. However, on March 21st of 2022, the defendants entered into a nationwide stipulated settlement agreement in D.C. with a similarly situated group of plaintiffs. Further, on July 1st of 2022, the defendants issued a new policy memorandum in light of the settlement, rescinding their prior policy memorandum and the AO opinion of a matter of ZRGC. Now, as an initial matter, the plaintiffs agree with the ruling in Duarte in this aspect, finding that the court retains jurisdiction to review the plaintiff's claim. The defendants continue to mischaracterize the plaintiff's position as an attack on their final orders of removal. But what the plaintiffs are requesting from this court is a determination on which administrative agency has jurisdiction over the plaintiff's application. So if, I don't mean to interrupt your train of thought, but if you were going to summarize for us in one or two sentences what you would like for our reasoning to be at the end of an opinion, as a summary, what would it say? It would address two issues. First, that this court retains jurisdiction over this matter because this suit is not jurisdictionally stripped by Patel because we are not attacking a final order of removal. Other courts have noted that anything tangential to removal order still retains jurisdiction by the court. Secondly, I would ask this court to make a ruling that the plaintiff's entry to the United States on TPS advanced parole is considered a new entry and they're deemed as arriving aliens, meaning that USCIS would be the sole jurisdiction for them. I guess we can move on to our second portion of this that I'm sure the court and we have already addressed it is why are we revisiting the 2022 decision in Duarte? That was a great question. Why are we revisiting a recent decision? Well, we have to look at a couple of things. One, the actions by the defendants post Duarte and the unanswered questions of Duarte. So, as an initial matter, we have discussed the defendants entering into a nationwide settlement in the D.C. Circuit, which allowed plaintiffs who had traveled on TPS advanced parole with final orders of removal and had their applications denied by USCIS, a vehicle in which to reopen their prior removal orders and adjust status with USCIS. But what the settlement did not specify is what agency has a jurisdiction over the plaintiff's applications for adjustment of status. The settlement was essentially a vehicle in which to reopen prior removal orders and terminate them. The relevance in this is the defendant's concession in the settlement agreement that an entry on temporary protective status advanced parole is considered a new entry for the purposes of adjustment of status. Now, this is very important. Prior to 2020, this was the position of the defendants, that an entry on TPS advanced parole was an entry sufficient for the purposes of adjustment of status under 245A. In 2020, they issued a policy memorandum stating that it was a reinterpretation of a prior policy. I notice the comment of a rule change. After some litigation, they have now walked back their position in 2022 with the settlement saying, yes, it is an entry acceptable for adjustment of status. However, you are not arriving aliens. Jurisdiction is still with Immigration Court. Now, we have to cross-reference the government's position concessions in the settlement with some of the decisions here at the Fifth Circuit and in the Supreme Court. Following the Supreme Court's decision in Sanchez v. Mayorkas, we know that TPS is treated as status. However, TPS holders are not actually admitted in status pursuant to their holding TPS status. Somewhat confusing. And in Duarte, the Fifth Circuit played off of that reasoning that a TPS holder's entry in the enhanced rule should be deemed an admission in TPS status as they were returning to the status they had prior to departure. However, there is one thing and one inquiry we should actually be looking at is what actually happened at the Port of Entry, not what should have happened at the Port of Entry. It is undisputed that all of the plaintiffs applied for admission to the United States Port of Entry presenting their TPS advance parole document. They were allowed into the United States with the Department of Homeland Security, Officers of Customs and Border Protection, stamping their passports and their TPS documents with paroled TPS and a DA inscription on their I-94. Now, the plaintiffs were therefore paroled into the United States as a matter of discretion by the powers vested in the Department of Homeland Security to grant parole as an exercise of their discretion. Now, prior to Duarte, there was no mechanism in which a TPS holder attempting to re-enter the United States could be admitted to the United States. 8 U.S.C. 1101 lists a myriad of different statuses in which a non-citizen applicant for admission can be admitted into the United States. None of them were temporary protected status. The fact is that the defendants were paroled and the plaintiffs were paroled into the United States by the defendants and the court in Duarte attempted to convert a parole into an admission. This is I believe is inappropriate as it usurped the ability of Department of Homeland Security to Now, under immigration law, when the applicant for admission presents themselves at a port of entry, there are three options in which the officer of Homeland Security may elect. Admit, parole, or refuse admission. Now, we know the plaintiffs were not refused. Admission is a term of art. Under 8 U.S.C. 1101-813-A, admission is defined as after inspection and authorization by an immigration officer. However, as stated, there is no TPS admission classification in that statute. So, you described where you think Duarte went wrong, but we're stuck with Duarte. So, how do you get around that? How do you deal with the error in at least that allegation is in Duarte? I think the important thing is moving forward, Duarte has classified what the court deems the entry for TPS holders in the future is perspective. I don't think that the ruling of Duarte should be patrolling retrospectively because there was no mechanism at the time before Duarte to admit a TPS holder. Nothing in the statute allowed for admission as a TPS holder. And for decades of parole practice, it was the defendants who readily paroled them and allowed these individuals to enter. I think that if Duarte were to continue retrospectively, it would cause a conundrum in which it would allow a judicial body to essentially convert a parole into an admission. And it creates a kind of a situation where if the body was allowed to do that, then any admission under any status could come under judicial review to reinterpret, depending on the government's position on a particular visa, on a particular entry. I think it's extremely dangerous. I think there is a middle ground in which all can survive, but retrospectively, it could be deemed as a parole as an alleged alien. Additionally, as mentioned, there was no TPS status an individual could be admitted under. Additionally, there is no classification for being admitted under no lawful status. So the absence of a status cannot be a category in which one can be admitted under. It's somewhat confusing because the Supreme Court stated that TPS was status, or they would consider it status, without being admitted into that status. So therefore, if an alien is returning to the United States and they've never actually been admitted under TPS status, they can't be admitted in that status, if that makes sense. They would essentially be admitted under no status, which under this circuit's precedent, under Gomez v. Lynch, which Justice Smith, you stated that there is no entry under no status. It is a possibility. It is the absence of lawful status. In reality, that leaves us with one option at that time. Parole. Paroled arriving alien. An individual who presents himself at a port of entry, who does not meet the criteria for being admitted to the United States, does not refuse admission, is paroled as an arriving alien. And as we know from the matter of Yari, the USCIS holds jurisdiction over applications for adjustment of status for individuals who are paroled in as arriving aliens. This is even the case if an individual has a prior order of removal. Therefore, we are asking for this court to retain jurisdiction as Patel does not strip its purview for making a ruling on this case. Additionally, we ask this court to find that the plaintiffs were in fact paroled into the United States and jurisdiction for their applications for adjustment of status is proper with USCIS. Thank you, Mr. Rivera. You saved time for a vote. Ms. Peeples. Good morning, Your Honors. May it please the court. My name is Timoni Peeples and I'm here on behalf of the government. Your Honors, in this APA case, plaintiffs challenge CIS's decisions administratively closing or denying their adjustment of status applications. Yet, controlling Supreme Court and Fifth Circuit precedent preclude their claim. As a threshold matter, this case should be dismissed under Rule 12B1. First, because the INA strips the court of jurisdiction over their claim. And second, because plaintiffs failed to exhaust administrative remedies. And even on the merits, their challenge fails because as district court determined, plaintiffs are not arriving aliens and CIS has no jurisdiction over their adjustment of status applications. Consequently, the court should affirm the district court's dismissal, but on jurisdictional grounds or alternatively on 12B6 grounds. Unless Your Honors have a preference, I'll begin with the jurisdictional deficiencies first. Plaintiffs raise a single cause of action in their complaint, an APA claim challenging CIS's decisions, administratively closing or denying their adjustment of status applications due to a lack of jurisdiction. However, the court lacks jurisdiction over that claim because on its face, 1252A2B1 bars jurisdiction to review CIS's adjustment of status applications or decisions. That provision states that no court should have jurisdiction to review any judgment regarding the granting of relief under Section 1255. And 1255 includes plaintiff's request for status adjustment here. The Supreme Court's recent decision in Patel interpreting this jurisdictional bar is controlling and clear. Under Patel, the only challenge to any decision pertaining to adjustment of status is a legal challenge made to a circuit court in a petition for review of a final order of removal. Does Patel overrule Duarte? Well, to the extent that Duarte held that 1252A2B1 could not conclude judicial review where the non-citizen had no other available avenue of review, then it conflicts with Patel. But Patel specifically reserved the issue that's before us. Your Honor, the court did say that this decision was factually made in the context of removal proceedings. However, the court broadly construed the provision that applies here. And that interpretation of 1252A2B1 applies here even though we're talking about a different context. Well, it may be sort of inefficient in the long run the way we proceed. And I'm not lecturing you here. I mean, you're well aware of it. But we have a rule of orderliness. And if we have a case that's on point from our circuit, then our rule says that we continue to apply it unless and until either, of course, Congress has changed it or the Supreme Court has specifically overruled it. You're well aware of that. And I know different circuits handle this different ways. But we're fairly strict in adhering to that. Your Honor, the thing is that Duarte, we feel, is controlling. It's good laws controlling here with respect to the arriving alien issue. But with respect to jurisdiction, of course, Patel came after Duarte. But in the Duarte decision, the court does reason that provisions of 1252A2B don't apply where the noncitizen has no other means of judicial review. And that logic was specifically rejected by the Patel court. Now, it wasn't dicta. However, the reasoning is still valid, that the court said that the language of the statute was very clear and that policy considerations cannot and should not trump the clear language of the statute. And so we feel that part of Duarte's opinion that conflicts with Patel should not govern here. And the court can apply the logic of Duarte with respect to, again, the 12B6 issue, which is the merits issue of whether or not planes are arriving aliens and which agency has jurisdiction. But with respect to this particular jurisdictional issue, Patel does appear to be controlling on the interpretation of 1282A2B1. And it does appear to, it also says that it doesn't restrict itself to certain kinds of decisions. It's not limited only to the actual grant or denial of relief. Rather, it prohibits review of any judgment regarding the granting or denying of relief under section 1255, which would seem to preclude plaintiff's challenges here. There's just simply no other way to interpret that language to allow plaintiff's claims to proceed here. And so I would also note that to the extent that Melendez, which was also cited in Duarte, held that 1252A2B1 only applied to discretionary actions, that holding is also inconsistent with Patel. I would also like to further note that in our brief, we cited several district courts that applied 1252A2B1 as interpreted by Patel to bar challenges to CIS adjustment of status decisions. And since then, three circuit courts have also, can be added to that list as we advised in our Rule 28J letters. The Britt-Covey decision in the 7th Circuit, Abouzid in the DC Circuit, and the Doe decision in the 11th Circuit. And in all of these cases, the circuit courts held that 1252A2B1, as interpreted by Patel, barred jurisdiction to review challenges to CIS's adjustment of status decisions. Notably, plaintiffs offer no valid response to this argument. They have not made any response to our 28J letters, and we think that's because it's clear that 1252A2B1 bars their claim. And so the court should affirm dismissal on 12B1 grounds. But jurisdiction is lacking for a second reason. Under Cardozo and this court's recent decision yesterday in El Dockley, plaintiffs can't pursue an APA claim because they failed to exhaust administrative remedies. There's no dispute that they all have been ordered, deported, or removed. They all remain in immigration proceedings, and they all may seek to reopen their proceedings to seek status adjustment with the immigration court. They haven't done so, and until they exhaust that administrative remedy, then the court lacks jurisdiction. Now, in addition to jurisdictional issues, plaintiffs fail to state a plausible claim for relief as a matter of law. Duarte is positive on this issue. In fact, it involved the exact same set of facts in this case. There you had TPS beneficiaries with final orders of removal who traveled without authorization. They applied for adjustment of status upon return to the United States, and CIS administratively closed their applications due to a lack of jurisdiction. The plaintiffs there made the same arguments that plaintiffs made here, that they were arriving aliens when they returned to the U.S. from travel without authorization, and this court rejected that argument, holding that MATINA prohibits paroling a returning TPS beneficiary. Now, we heard from plaintiffs' counsel a few minutes ago, and he talked about a lot of the history and regulatory back and forth on these issues, but he failed to mention MATINA, which specifically governs here, as this court held in Duarte. So, under Duarte, the plaintiffs were not arriving aliens. The immigration court had exclusive jurisdiction over their adjustment of status applications, and that holding applies equally here. Now, plaintiffs may not like Duarte's holding. They may disagree with it. It may not help their position, and that's all fine, but they identify no valid reason that this court should depart from Duarte and overturn precedent. First, their TPS is not status argument makes no sense. Contrary to their assertion, Sanchez did not hold that TPS is not lawful status. In fact, it held the very opposite. It held that TPS gives beneficiaries non-immigrant status, but does not admit them for purposes of the inspected and admitted or paroling requirement under 1255A. In Salaranzo, this court held the same thing. Granting TPS does not constitute an admission under Section 1255A. It simply bestows a temporary status upon the recipient. Second, their unlawful status is not status argument has no merit either. Duarte defines status as a type of permission to be present in the United States. And under Tula Rubio, this court held that status encompasses both lawful and unlawful legal conditions under the INA. Thus, all Duarte meant in discussing status is that whatever status a TPS beneficiary has prior to departing the country, whether it be lawful or unlawful, Matina does not permit the government to recategorize them as parolees upon their return. And third, I would like to just point out that plaintiff's argument about the kerosene settlement was never raised below, although they had ample opportunity to do so. And the court should disregard that argument now. But in any event, the argument is a red herring. The agreement, they don't point to any provision agreement that supports their interpretation of it. Nowhere in the kerosene settlement does the government stipulate that plaintiffs are arriving aliens. The kerosene settlement requires that a TPS beneficiary with removal or deportation order and travels with authorization, such as the plaintiffs, must terminate their their order before seeking adjustment status with CIS. That's consistent with the government's position here and with Duarte and with Sanchez. And again, kerosene, the only thing it shows is that they have unexhausted available remedies that they have not pursued. And that prevents this court from exercising over their claim. So in conclusion, your honor's precedent precludes their claims here. There's simply no way to read Patel as permitting their claims to proceed under 1252A2B1. The jurisdictional bar is clear. Second, Cardoso in this court's recent decision, el-Dakhli, requires that they first exhaust administrative remedies. And Duarte held that Matina prohibits paroling a returning TPS beneficiary. That holding applied here means that the plaintiffs could not return to the United States as arriving aliens. And it also means that the immigration court, not CIS, has jurisdiction over their status applications. Unless the court has questions. Thank you, Ms. Peebles. Thank you, your honors. Mr. Rivera or Rivello? Yes, your honor. Duarte is already the precedent that affirmed this court's jurisdiction. The government had made a couple of comments of why the response to a couple of the 28J briefs were not felt, simply because Duarte has already established the precedent that this court has jurisdiction. Another important thing that the government fails to state is Title 1252, the title of this is Judicial Review over Orders of Removal. The defendants at no time are attacking their final order of removal. It is never applied in any of the pleadings that we are attacking our final order of removal. This suit, the purpose of it is to determine jurisdiction, not to attack a final order of removal. It's not attacking the ability of the defendant to initiate removal proceedings or execute this removal order. Nor are they seeking appellate review of the ultimate merits of their applications for adjusting the status or the discretion of the defendants to deny or approve a discretionary immigration benefit. As the Supreme Court noted in the majority, Justice Barrett and Patel limited the court's opinion, stating 8 U.S.C. 1252 removes jurisdiction to review facts found as part of discretionary relief under 8 U.S.C. 1255. The defendants asked the court to extend this ruling to essentially all decisions made by U.S.C.I.S., factual, legal, or even jurisdictional. We urge the court to follow the district court's ruling and reasoning, Duarte, to retain jurisdiction over this matter. Now, as mentioned in the defendants' briefs and in their supplemental filings, they've asked this court to accept an extremely broad interpretation of Patel, one in which a federal court would never have the ability to review an immigration decision made by U.S.C.I.S. Discretionary, factual, legal, and jurisdictional challenges would all fall away outside of the removal proceedings contest. Now, this interpretation far exceeds Patel, the statute, and congressional intent, and it presents a dangerous and slippery slope leading to the deprivation of due process and the legal rights of noncitizens to seek fair and just and correct adjudication of their applications. Now, let's assume this position was correct. And one day, U.S.C.I.S. decided to simply stop adjudicating all applications for noncitizens who are in status or an authorized state. They returned millions of applications unadjudicated. What recourse would these noncitizens have? Under this scenario, only review in removal proceedings context would be the review. It would require these individuals to fall out of lawful status or violate their own status, be placed in removal proceedings. Only then would they have their applications for adjustment of status reviewed by an immigration judge. I do not believe that this is what Patel envisioned or what the statute envisioned. Additionally, Duarte did rule on a similar argument. However, it is the defendants who have changed their position several times. And the concern, gentlemen, the defendants walk back their position that TPS was not a valid entry. Now, in terms of entry, we ask this court to find that the plaintiffs were not admitted but paroled as arriving aliens. Now, as we said, we caution the court to not recategorize this entry from a parole to an admission, as it would dilute the authority of the court of entry officers in making this discretionary determination. Therefore, we urge the court to find that they have jurisdiction over this matter and that the proper jurisdiction for the applicant is with USCIS. All right. Thank you, Mr. Rivera. Your case is under submission. So let me ask both counsel, people referred to the Aldockley decision, and we understand that was only issued yesterday. It's a published opinion. So let me just ask both sides to submit to us a letter by next Monday, the close of business Monday, which is the, what day is that, the 10th, I believe, addressing Aldockley and what effect, if any, it has on this case, three pages only. And let me just caution you, this letter is not an opportunity to expound on other issues or to respond to other arguments that have been made, but it's just to tell us what your view is about any effect that Aldockley might have on this case. And with that, your case is under, and all of today's cases are under submission, and the court is in recess until 9 o'clock tomorrow.